## Case No. 7,240.

### In re JAYCOX et al.

[7 N. B. R. 303; [1] 7 West. Jur. 18.]

District Court, N. D. New York. Sept. 21, 1872.

[1] [Reprinted from 7 N. B. R. 303, by permission.]

HALL, District Judge. At the second meeting of the creditors· of the bankrupts, sundry creditors who had proved their debts, objected to the proof of debts made by sundry other creditors, at or prior to the first meeting, and to their right to vote upon a motion to declare a dividend, upon the ground that such debts were secured by a mortgage given by said bankrupts, upon their real estate, to George F. Comstock, and also by a pledge to him of one hundred shares of the stock of the Delano Iron Works, of the par value of $10,000. The question raised by such objections was thereupon certified into this court, by the register, for decision. The debts in respect to which such objections were made amount to more than $85,000. They are secured to the creditors proving the same by· the endorsement of the·Hon. George F. Comstock, who holds, as his security against loss by reason of such endorsements, a "grant" or mortgage of real estate of the bankrupts. The grant or mortgage referred to declares: "This grant is intended as a security that the said John M. Jaycox and John A. Green, their executors and administrators, shall well and truly pay or cause to be paid all the notes, bills and drafts made by the firm of Jaycox & Green, heretofore endorsed by said Comstock, or which shall be hereafter endorsed by him, as the said notes, bills, or drafts are or shall become due, to the holders thereof; and shall also well and truly pay unto said Comstock, his executors, administrators and assigns all sums of money which he shall be obliged to pay, or shall pay, on account of any liability whatsoever for the said firm of Jaycox & Green; and shall indemnify him," etc. The amount of such liability not to "exceed at any one time $75,000." The indebtedness of the bankrupts, to the proof of which such objections were made, accrued after the ex-

ecution of such mortgage, and is, to the extent of $75,000, mentioned in such mortgage, embraced within its provisions; and stock of the Delano Iron Works, of the nominal value of $10,000, is also held by said Comstock, as a further security or indemnity against loss by reason of his endorsement of such notes, or some part thereof. These general facts, most of which appear upon the papers before me, were substantially admitted by the assignee, and by the counsel of the creditors whose rights to vote and.receive a dividend upon the claims presented by them were brought into controversy, as well as by the counsel for the creditors .who oppose the allowance of such claims.

On the presentation of the register's certificate the contending creditors appeared by their counsel. The assignee appeared in his own proper person and stated the facts as understood by him, and submitted the question presented for the decision of the court, leaving the argument in regard to the rights of the contending parties to the counsel appearing in their behalf. There being no allegation of insufficiency or informality in the proofs of debt filed and no motion having been made by the assignee or any creditor for an order expunging such proofs or rejecting such claims, it was suggested by the court that the proper formal proofs of the debts in controversy having been made, and the objection against the right of the creditors to vote and receive dividends thereon being urged on the sole ground that the evidence produced by the contesting creditors showed that the creditors whose claims were opposed had security for such debts upon the bankrupt's property, the better, if not the only proper mode of presenting the question in controversy, would be to move to expunge such proofs; such suggestion being made upon the assumption that the proofs of debt being sufficient, prima facie, and the register having no power to expunge such proofs or to reject such claims, he had no authority to refuse the votes of the claimants or to exclude them from the benefit of a dividend. Upon this suggestion it was agreed that the objecting creditors should move, on the papers sent up by the register and upon his certificate, for an order that the creditors whose claims were opposed should show cause, on some subsequent day, why the proofs of their debts should not be expunged; and that the counsel should argue the motion upon such certificate and papers. Under this agreement the counsel proceeded to argue the question whether the creditors, whose claims were so opposed, were, under the provisions of the 20th section of the bankrupt act [of 1867 (14 Stat. 526)], precluded from making proof of the whole amount of their debts, and receiving dividends thereon, upon the ground that they had a mortgage or pledge of real or personal property of the bankrupts', or a lien thereon, for securing the payment of their debts.

The question presented is an important one, and which it would seem must often arise; but it is believed that it has not been decided in any reported case, arising under our present bankrupt act. It was, therefore, deemed proper to examine the papers upon which the question was presented, in order to understand, if possible, the precise facts upon which the questions in controversy in this case should be determined. These papers have been examined, and they furnish a considerable addition to the already formidable and shameful mass of evidence on file in the clerk's office, of the careless and disgraceful manner in which the proceedings in bankruptcy are conducted by and before registers in bankruptcy. The register in charge of this case has been regarded as one of the ablest and best of the registers of this judicial district; and from the loose and careless manner in which the proceedings in this case have been conducted, there is much reason to fear that the gross and culpable negligence and carelessness of many registers, whose annual compensation is double, if not much more than treble that of the judges of their judicial districts, will ultimately lead to much litigation and loss. Some of the instances of the looseness of the proceedings,· and of want of care in many material and important statements, will be briefly referred to.

The register's certificate states that the question certified "was stated and agreed to by the counsel for the opposing parties, to wit: Mr. Comstock, who appeared for the Syracuse National Bank and other creditors of said bankrupts, and Mr. Ruger, who appeared for Messrs. R. & D. Stewart and other creditors of said bankrupts;"—without stating in either case the names of such other creditors, so that either party desiring to appeal from a decision of this court made under such certificate could know who were proper parties to such appeal, and so that other parties could know who were bound by such decision if not reversed on appeal or review. The certificate, then, after stating that the Syracuse National Bank moved that the assignee divide $40,000 of the money in his hands among the creditors who had proved their debts, states "that Messrs. R. & D. Stewart and other creditors of said bankrupts, by their counsel, objected to the proofs of debts, and to the right of the following named persons and corporations, creditors of said bankrupts, who had filed proofs of their debts for the amounts hereinafter named, as unsecured debts against said bankrupts' estate, to vote upon said motion, viz.: The People's Savings Bank, $35,272.20; the Syracuse National Bank, $7,500; Wilkinson & Co., $12,500; Third National Bank, $17,-500; Bank of Skaneateles, $5,000; Merchants' National Bank, $2,500; George N. Hurst, $2,500; W. G. Tracy, $2,500; Mead Belden, $2,500; James J. Belden, $2,500; Ballston Spa National Bank, $2,500; Fourth

National Bank, $2,500; nor upon any question affecting the estate of the bankrupts, or to share in the dividend to be made thereon; upon the ground that the said debts and each of them are secured by a mortgage given by said bankrupts, on their real estate, to one George F. Comstock, a copy of which is hereto annexed, and also by a pledge of one hundred shares of the Delano Iron Works stock, the par value of one thousand dollars per share." The certificate then further states: "Upon these questions Mr. Ruger, as counsel as aforesaid, introduced the evidence herewith returned of George F. Comstock, Patrick Lynch, and Orrin Ballard; also return herewith the proofs of debts of the various persons and corporations above named," etc. After diligent search, I am unable to find any evidence of Patrick Lynch and Orrin Ballard apparently taken after such question arose; but I find among the papers before me (whether taken from the files of the clerk, or returned by the register with a former certificate, I am not able to say) minutes of the testimony of Patrick Lynch and Orrin Ballard, apparently taken before the register, May 1, 1872, and filed with the clerk on the tenth of that month, which may be the evidence of Patrick Lynch and Orrin Ballard, introduced by Mr. Ruger; as it may well have been considered as tending to show that the debts of the Syracuse National Bank, and of the "People's Safe Deposit and Savings Institution of the State of New York," alias "The People's Safe Deposit Company," and alias the "People's Savings Bank," are not provable in these proceedings.

On examining the proofs of debt returned by the register, it appears that the deposition of Patrick Lynch, made before the register, May 4, 1872, is the only deposition which can be assumed as proof of the debt of $35,-272.20, stated in the certificate as that of the "People's Savings Bank." This deposition does not, in the body of it, state the amount of the indebtedness claimed, but the deponent swears that he is the cashier of "People's Safe Deposit and Savings Institution of the State of New York, * * * and that the statement of the account between the said corporation and said bankrupt, hereto annexed, is a full, true, and complete statement of account between the said corporation and the said bankrupt; * * * that the debt thereby appearing to be due from the estate of the bankrupt to the said corporation was incurred on or before the first day of April, 1872; and for the consideration therein stated," etc. Annexed to this deposition by an ordinary metal pin thrust through the deposition and the annexed paper so as to make but two holes in each, and leaving it easy to substitute any other paper without any evidence of its substitution, is a paper headed in ink, "Notes of Jaycox & Green, Owned by the People's Savings Bank. Dated, ——; time, ——; due, ——; indorsed by ——; amount ——;"

under which is a list of eleven notes for different sums, amounting in the aggregate to $27,272.20. The words, "People's Savings Bank," in such caption, have been crossed out by lead-pencil marks, and the words, "People's Safe Deposit and Savings Institution," written in pencil marks above it. At the bottom, under the list of notes, is written: "The above being all for moneys loaned upon the notes above mentioned. Ex. 1, D. F. Gott." This list is evidently not in the handwriting of Patrick Lynch; it is not attested in any manner by any signature of any officer or book-keeper of the corporation, or otherwise, except by the marking by the register; and how any human being fit to be trusted with the safe-keeping of fifty dollars in money could suppose that such a statement "was a full, true, and complete statement of the account between the said corporation and the bankrupt" (if there was any such account), "and of the consideration of the indebtedness" intended to be sworn to, when it does not state the amount loaned, or to whom, or when, or anything else in the proper form of a full, and complete, and true account, passes my comprehension.

The fourth general rule in bankruptcy, adopted by this court in June, 1867, (a rule which it is believed no judge forty years ago would have deemed it necessary to make), provides that "every register in bankruptcy, or other officer of the court, before administering the proper oaths in verification of any petition, schedule, inventory, deposition, affidavit or other paper, shall see that the different sheets or pieces of paper of which it is composed, and those to which it refers as annexed, are properly fastened together in such manner as to give reasonable security against the separation, loss or change of any part thereof." The papers presented in this case show the necessity of the rule and of its observance; as well as repeated violations of it in very important cases. Continued and flagrant violations of it hereafter, as well as the repetition of the less common, (and it is hoped infrequent) offences of signing and furnishing blank certificates required by the fifth and sixth general rules in bankruptcy, or giving false certificates under the same, will be considered sufficient cause for the removal of a register.

The 22d section of the bankrupt act provides that "to entitle a claimant against the estate of a bankrupt to have his claim allowed, it must be verified by a deposition in writing, on oath or solemn affirmation, before the proper register or commissioner, setting forth the demand, the consideration thereof, whether any and what securities are held therefor, and whether any and what payments have been made thereon; that the sum claimed is justly due from the bankrupt to the claimant; that the claimant has not, nor has any other person for his use, received any security or satisfaction whatever other

than that set forth," etc. In respect to the proof of the very large claim now under consideration, it is clear that these provisions have not been complied with. It does not appear whether the moneys said to be loaned were loaned to the bankrupts, or to the indorser or some other holder of the paper, or when, or to what amount; it does not make the required statement in respect to securities, and only inferentially that there have been no payments. It is not likely that there was any such thing as an indebtedness upon an account between the bankrupts and the corporation, in the proper and ordinary acceptation of the term "account"; and it is reasonably certain that in point of fact the debt was, and should have been proved as, a debt due upon the promissory notes referred to in the list attached; and which notes could not be properly proved and a dividend paid thereon without their production, or proof of their loss. In re Knoepfel [Case No. 7,892].

The deposition in proof of the alleged debt of the Syracuse National Bank is made by Orrin Ballard, cashier. It is in the same form, or nearly the same form, as that above mentioned, made by Patrick Lynch, and it contains, except in regard to the amount and names of parties, substantially the same statements. It sets forth "that the statement of the account * * * hereto annexed is a full, true and complete statement of account between the said corporation and the bankrupt," etc., and it contains the like statement in regard to the consideration of the debt; but no account or statement whatever is annexed, except there are annexed by a single pin, and in precisely the same loose and insecure manner before referred to in respect to the deposition of Lynch, what purport to be copies of three promissory notes for $2,500 each, signed by Jaycox & Green, and indorsed by George F. Comstock. No reference to these copies as such, and no reference whatever except by the words "statement of the account between the said corporation and the said bankrupt" (in the singular number) "hereto annexed," is made in such deposition; no statement in respect to securities for the debt is made therein; nor is it stated that such debt is for moneys loaned;—in short, no consideration for the debt is stated. The deposition in proof of the debt of the Merchants' National Bank is substantially in the form of those already referred to, but at the foot of the deposition is the following: "The account referred to is the notes annexed—four in number.—This proof is to be taken in connection with one heretofore made. Fees $1.30." The papers annexed are not original notes, but on their face purport to be copies of notes, as follows:—One made by Jaycox & Green for $2,500, payable to the order of George F. Comstock, and indorsed by him; one for $50, made by Martin Fitzgerald, and indorsed by Jaycox & Green; one for $65,

made by A. B. Russell & John W. Russell, and indorsed by Jaycox & Green; and one for $327.64, made by Hoagland & Stanton, and indorsed by Jaycox & Green. They are pinned to the deposition in precisely the mode before described. The deposition contains no statement in respect to there being any security for the debt, or that Jaycox & Green had been charged as indorsers. The depositions in proof of the debts of the other banks named in the certificate are not objectionable to the same extent as those hereinbefore noticed; but it is believed none of them state what is required in respect to the debt being secured or unsecured, and that all of them are otherwise defective and insufficient. The depositions in proof of the debts of individuals are possibly sufficient in point of form, unless taken after the adoption of the 34th general order in bankruptcy. The parties in some instances swear that they have not had or received any security whatever for the debts claimed, though it appears by the depositions that the notes referred to therein were indorsed by George F. Comstock; nor does it appear in these, or indeed in any of the depositions or papers presented, that he had been duly charged and was liable as such indorser, although the notes indorsed by him are past due. In respect to these individual claims it is, perhaps, necessary to a proper decision of the motion for an order to show cause, that the very grave and doubtful question argued by the counsel for the contesting creditors should be considered.

The main provisions of the bankrupt act which bear directly upon this question are contained in the 20th section, and are as follows, viz.: "When a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon, for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct; or the creditor may release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt. If the value of the property exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt's right of redemption therein on receiving such excess; or he may sell the property subject to the claim of the creditor thereon; and in either case the assignee and creditor respectively shall execute all deeds and writings necessary or proper to consummate the transaction. If the property is not so sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt;"—and the question to be determined is whether the creditors whose debts are primarily secured by the indorsement of Judge Comstock, and are, therefore,

in equity, secured by the mortgage and pledge of the property of the bankrupts, made to him as aforesaid, have "a mortgage or pledge of real or personal property of the bankrupts, or a lien thereon, for securing the payment of such debts" within the true intent and meaning or just construction of the provisions in the bankrupt act which have just been quoted.

It must be conceded that the creditors have not the legal title to any such security or lien as the provision contemplates; but whether they have not, in equity, such a mortgage, pledge, and lien as precludes them from proving their debts, is a very grave question, admitting of serious doubt. In Vail v. Foster, 4 N. Y. 312, 314, Bronson, C. J., in delivering the opinion of the court, said: "It is a settled rule in equity that the creditor shall have the benefit of any counter bonds or collateral security which the principal debtor has given the surety, or persons standing in the situation of a surety, for his indemnity. Such securities are regarded as trusts for the better security of the debt, and chancery will compel the execution of the trusts for the benefit of the creditor." Mr. Justice Story (Story, Eq. Jur. § 638) says: "If a principal has given any securities or other pledges to his surety, the creditor is entitled to all the benefit of such securities or pledges in the hands of the surety, to be applied in payment of his debt." And see Id. §§ 327, 499, 558; Wright v. Morley, 11 Ves. 22; Pratt v. Adams, 7 Paige, 615; Clark v. Ely, 2 Sandf. Ch. 166; Ten Eyck v. Holmes, 3 Sandf. Ch. 428. And this is undoubtedly the acknowledged doctrine of the courts of this state, and of the United States, in exercising their equity jurisdiction.

The creditors holding the paper covered by the mortgage and pledge made by the bankrupts to Comstock, have therefore, in equity and potentially, the lien and security afforded by such mortgage and pledge; and upon proper proceedings in a court of equity can obtain the actual possession and control thereof, if such possession and control are by them deemed necessary for their security. So far as the security of these creditors is concerned, and so far as the effect upon the interests of the general unsecured creditors of the bankrupts is concerned, the equities and real substance of the case are apparently the same now as if the mortgage and pledge had been given to the creditors, or to a trustee, under an express trust, for their benefit and security; and if the provisions of the bankrupt act above referred to can be avoided, in all cases, by giving the security by way of mortgage or other lien upon the bankrupt's property to a trustee or surety, the act certainly needs amendment, if the real equities of the case are fully presented by the argument on behalf of the creditors, in whose interest this motion was made. I confess that I was at first very strongly inclined to the opinion that the case is within the provisions above quoted, and that the creditors were not entitled to prove their debts which were thus secured. Further reflection, and a hasty and imperfect examination of authorities, have induced grave doubts upon the question; and it now being before me only upon the application for an order to show cause, and most of the authorities not having been discussed or even cited by counsel, or examined by myself. I shall certainly give the case a more careful examination and a more deliberate consideration before making any definitive order thereon; for I have not yet learned to dispose of the rights of contesting parties to thousands and tens of thousands of dollars without examination, even though the parties appear to have left them to the chances of a decision upon papers as disgracefully loose and slovenly as those presented in this case.

The argument of the counsel for the opposing creditors in this case, whether founded upon the provisions of the bankrupt act or the general principles of equity, is certainly specious, even though it be unsound. The main objection to it, as founded upon the general principles of equity, is, possibly, that it looks only to the relative equities of the contending creditors, and leaves out of view the equities of the surety or accommodation indorser. As between the surety and his principal, the primary fund for the discharge of their primary and secondary liability to the creditors is the estate of the principal debtor; and the equity of the surety, where he has no security for his indemnity, or so far as the security held by him is insufficient for that purpose, is at least as great as that of the unsecured commercial creditors. If the security held by the surety is more than ample for his indemnity, without regard to the dividend declared in bankruptcy, the general creditors suffer no loss by allowing the secured creditor to prove for his whole debt, for the surety can enforce his mortgage and pledge only so far as is necessary for his indemnity; and if the interests of the unsecured creditors require it, the assignee can retain the property by the payment in full of the debts thus secured. And, in determining the construction of the bankrupt act, especially in view of the fact that the rule which that act prescribes, was, in substance, established by the decisions of the English courts of equity prior to any legislation prescribing it; and that the principle of such decisions had been approved and adopted by the courts of equity in this country, in somewhat similar cases, before it was adopted by statute in Massachusetts prior to its incorporation into the bankrupt act, the decisions of the courts of England and of Massachusetts should be carefully considered. It may be fairly argued that the decisions of the English courts, in cases claimed to be governed by such rule, must be considered as very important if not conclusive authority upon the proper construction and effect to

be given to the rule prescribed by the bankrupt act; and that the decisions of the supreme judicial court of Massachusetts upon the construction and effect of substantially the same language in the insolvent law of that state should have equal weight. The cases of Meed v. Nelson, 9 Gray, 55; Cabot Bank v. Bodman, 11 Gray, 134; and Provident Institution of Savings v. Stetson, 12 Gray, 27, are apparently in direct opposition to the position here taken by the counsel of the opposing creditors; and the case of Midland Banking Co. v. Chambers, L. R. 7 Eq. 179, and S. C., 4 Ch. App. 398, cited by him in support of his argument, appears to me, upon a hasty examination of the opinions reported to have been given in the vice-chancellor's court, and by the lords justices upon the appeal, to be an authority against his position rather than one upon which he can rest in its support. In the cases in Massachusetts the right of the creditor to prove for his whole debt was affirmed, and in the English case the decision was, in effect, in favor of the right; although the right of the surety to have the dividend applied in extinguishment of his liability was denied, for the reason that under the construction given to the contract of guaranty, it was held that the surety had thereby relinquished such right—a right which, it is supposed, would otherwise have been maintained. See, also the cases cited in the case of Midland Banking Co. v. Chambers, ubi supra; and In re Plummer, 1 Phil. Ch. 56.

It does not appear, from the reports of the cases in Massachusetts, that the question whether the creditor, in those cases, had not the security held by the surety, because the surety held such security as a trustee for the benefit of the creditor, was considered by the court; or whether it was supposed that the question was affected by the fact that the courts of Massachusetts exercised only a limited and imperfect equity jurisdiction. Surely, the reason given for the decision in Meed v. Nelson, viz., that "White (who held the security) was a mere accommodation indorser, and might never be called upon, and in that case the mortgage would never become a charge upon the estate of the insolvent," is not a very satisfactory one, as the question arose in a case where the principal debtor had been declared insolvent, and his estate was then being administered by the court of insolvency, and it appeared that the proof was made by the creditor at the request of such accommodation indorser.

As it appears from the papers before me, that the bankrupts' estate will, in any event, pay a very large percentage of their debts; and as it is stated by the brief of the counsel for the opposing creditors that the amount of such debts secured by the indorsement of Judge Comstock is over $95,000, and that unsecured debts to the amount of $97,000 and upwards have been proven, it is not likely that the party against whom this court may ultimately decide the main question will fail to "take the chances of an appeal." And as the defects in the proofs of debt, as the case now stands, would probably prevent a final decision of the most important question in the case until there shall be other papers and facts presented on the part of the opposing creditors, as well as on the part of the claimants, and the parties may, by a proper stipulation and an agreed state of facts, obtain an early decision here, and a review of that decision in the circuit court, at a very moderate expense, I shall now only stay proceedings in respect to a dividend upon such disputed claims, and in respect to any dividend upon the other claims proved which shall interfere with the rights of the claimants if their claims shall be ultimately established, in proper papers on which to found an order to expunge the order to give time to the opposing creditors to present more formal and proper proof of their debts, and more formal and proper proof of the debts in controversy; and also to give to the claimants time and opportunity to take such measures, if any, as they may be advised to take in order to obviate any formal or other objections to the proof of their debts heretofore made, or otherwise establish their rights.

After thus disposing of the pending application, it is proper to say that the cases decided in England and Massachusetts have not convinced me that the debts referred to can be proved. If the security had been given to a trustee, under an express trust for the benefit of such creditors, it would seem that in a court of bankruptcy, which, in the absence of express legal provisions, must, as a general rule, marshal the assets of a bankrupt upon the established principles of equity, as determined by the courts exercising equity jurisdiction, there would be little reason for holding that the case was not within the spirit and intent of the provision alluded to in Re Ruehle [Case No. 12,113]; and in equity it can make no difference that the trust is created and defined by law instead of being written out by the parties. If the surety had paid the debt of his principal before the proceedings in bankruptcy were commenced, or had proved it as a contingent debt and paid it after adjudication, it would seem to be clear that he could only have a dividend upon the balance of his debt after the proper application of the proceeds of his security; and there is no apparent reason why the failure of the surety to fulfill his obligation to the creditor, either in pursuance of an arrangement between them or otherwise, should operate to the prejudice of the unsecured creditors. The whole policy and purpose of the bankrupt act is founded upon the well-established doctrine of the courts of equity, that "equality among creditors is equity;" and the provisions in question should be so construed as to carry into effect such general purpose of the act. It is barely possible that the creditors whose right

to prove their debts is now opposed, may be required to litigate other complicated and difficult questions in case their claims are within the statutory provisions on which their proofs of debt have been opposed. It may, possibly, be insisted that, by proving their debts as unsecured debts, they have released the security which they have under the mortgage and pledge made to Judge Comstock; and, if such is the effect of their proof, they have, of course, thereby released the liability of the accommodation indorser. Indeed, the case is one of such complication and difficulty, that it is passing strange that where such large interests are involved, so little attention has, apparently, been bestowed upon them—especially in the preparation of the papers upon which it has been attempted to present the questions in controversy for decision.